**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**David PERRIN, Defendant-Appellant.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**Vivian M. VAUGHN and Vivian M. Vaughn, Administratrix of the Estate of Charles Eugene Vaughn, Deceased, Intervenor-Defendants-Appellants.**

**Nos. 14334, 14335.**

United States Court of Appeals Seventh Circuit.

May 7, 1964.

William D. Stephens, Theodore Lockyear, Jr., Lockyear & Lockyear, Thomas Lockyear, Evansville, Ind., for defendants-appellants.

Fred P. Bamberger, Robert H. Hahn, Evansville, Ind. (Bamberger, Foreman, Oswald & Hahn, Evansville, Ind., of counsel), for plaintiff-appellee.

Before DUFFY, KNOCH and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff-Appellee, State Farm Mutual Automobile Insurance Company (hereinafter called "State Farm") sought de-

claratory judgment in the U. S. District Court, to the effect that State Farm had no obligation to afford Defendant-Appellant, David Perrin, any defense in actions pending against him, or to pay any damages to which David Perrin might become legally obligated, because of the alleged wrongful death of Charles Eugene Vaughn or because of the alleged injury to Vivian M. Vaughn.

David Perrin counterclaimed for damages sustained by him in his defense of the pending actions.

Intervenor Vivian M. Vaughn, individually and as Administratrix of the estate of her deceased husband, Charles Eugene Vaughn, obtained judgments in the amounts of $20,000 for her personal injuries and $115,000 for the wrongful death of her husband. She sought to satisfy these judgments out of the proceeds of an insurance policy issued by State Farm on May 18, 1962 to Mr. Perrin.

Prior to May 18, 1962, Mr. Perrin had another insurance policy issued by State Farm for a term expiring September 6, 1962, for which a premium had been paid. On May 18, 1962, Mr. Perrin telephoned his insurance agent, Brady C. Burns, who was a relative of Mrs. Perrin, and advised him that the bank lienholder of the insured vehicle demanded collision and comprehensive coverage be included in the insurance contract. Mr. Burns, on behalf of Mr. Perrin, accordingly applied for public liability, property damage, collision, comprehensive and medical insurance on the same vehicle, forwarding a check drawn on the joint account of the Perrins to cover the unpaid portion of the premium tender. State Farm issued a new contract of insurance—the May 18, 1962 contract—which provided for the requested coverage for a term expiring September 6, 1962, and which replaced the prior contract. The premium and fee paid on the prior contract were credited to the May 18, 1962 contract. Mr. Perrin's name was misspelled and a new contract was issued and delivered in the same name.

This circumstance has no bearing on the case in this court.

Mr. Burns had erroneously computed the balance due for the increased coverage, and State Farm sent a refund check to Mr. Perrin, which he cashed.

The address given for Mr. Perrin in the policy is 301 Colonial Avenue, Evansville, Indiana.

Mr. Perrin's premium check was twice returned by his bank because of insufficient funds in the Perrins' account to cover it. When notified by his bank, Mr. Perrin instructed his wife to issue a new check. This check was also twice returned by the bank for insufficient funds.

State Farm wrote Mr. Perrin as follows:

"July 31, 1962
"David Perrin
"301 Colonial Ave.
"Evansville, Ind.
    "Policy No. 1092 457–C06–14
"Dear Mr. Perrin:

"Your check again was returned to us by the bank. This means that we have not received the funds required to keep your policy in force.

"Since we have no alternative, we are obligated to notify you that this policy is cancelled, effective August 12, 1962, 12:01 A.M. Standard Time.

"Won't you please send us another remittance before the effective date of cancellation so you can keep your insurance in force without interruption? Otherwise, we will be glad to reinstate your policy when your payment is received.

"A return addressed envelope is enclosed for your convenience.
        "Very truly yours,
            "Duane Weber,
                "*Policyholders service.*
"cc: Burns 1114"

This notice was sent pursuant to the provisions of item 7 of the policy conditions which reads:

"7. Cancellation. The named insured may cancel this policy by mail-

ing to the company written notice stating when thereafter such cancellation shall be effective.

"The company may cancel this policy by written notice, addressed to the insured named in the declarations and mailed to the address shown therein, stating when not less than 10 days thereafter cancellation shall be effective. Such notice of cancellation shall be sufficient notwithstanding the death of the insured named in the declarations.

"The mailing of the notice shall be sufficient proof of notice and the effective date and hour of cancellation stated therein shall become the end of the policy period. Delivery of written notice shall be equivalent to mailing.

State Farm contended that it cancelled its policy effective August 12, 1962 at 12:01 A.M. Standard Time by its notice of cancellation mailed July 31, 1962. The accident giving rise to the intervenor's claims occurred August 17, 1962.

On August 21, 1962, the envelope containing State Farm's notice of cancellation was returned bearing the Post Office stamp: "moved, left no address."

The District Court found that:

"Mr. Perrin had no knowledge of this notice of cancellation in that in July, 1962, he was experiencing marital troubles, resulting in divorce litigation. He left the State of Indiana for the State of Missouri for over a month temporarily and changed his residence to his parents in Pike County, Indiana. Mrs. Perrin moved to Boonville, Indiana. * * * Mr. Perrin during his absence had his mother and father check his mail at the 301 Colonial Avenue, Evansville, Indiana, address. * * *

"Prior to August 17, 1962, Mr. Perrin did not notify plaintiff of his change in address and made no arrangements with the United States Postal Service for a change of address for 301 Colonial Avenue,

Evansville, Indiana. The plaintiff had no knowledge of any other address of Mr. Perrin prior to August 17, 1962 and particularly on July 31, 1962 than that listed in the contract's declarations which was 301 Colonial Avenue, Evansville, Indiana. * * *

"The defendant's Mr. Perrin's, plight was due to his marital strife and resulting emotional state of mind. He failed to look after the affairs of his own personal business of paying premiums, notifying the plaintiff of address change, change in the insured automobile, and absented, if not secreted, himself for approximately one month so that the United States Mail Service could not effectively deliver plaintiff's mail properly addressed and timely mailed to him."

When the July 31, 1962 notice was returned, State Farm sent a request for a new address to Mr. Burns. On September 10, 1962, Mr. Burns notified State Farm of Mr. Perrin's new address. A retyped copy of the July 31, 1962 letter with the second returned check was mailed to Mr. Perrin on September 18, 1962.

The District Court concluded that:

"The defendant, Mr. Perrin, failed to pay the contracted premium of May 18, 1962 for the contract of insurance of such date. The plaintiff duly cancelled such contract effective August 12, 1962 in accordance with the terms thereof prior to the accident of August 17, 1962. The plaintiff is not obligated to perform any of the terms of the May 18, 1962 contract of insurance from and after August 12, 1962. There was no contract of insurance in force and effect between plaintiff and the defendant, Mr. Perrin, on August 17, 1962."

Appellants list the contested issues as:

1. Under Indiana law can there be an effective cancellation of an automobile public liability insurance

policy under evidence merely of mailing of notice of cancellation in the face of evidence that it was in fact not received by the insured?

2. Whether the language of the cancellation clause of the policy is ambiguous and capable of double meaning?

3. Whether the cancellation clause of the policy in question is against public policy?

■■ The validity of this particular type of clause has been widely considered and has almost unanimously been upheld. As the Illinois Appellate Court said:

"The rule supported by the great weight of authority is that the express terms of the contract make the notice of cancellation sufficient when deposited, and that the provision being unambiguous, must be enforced by the courts as written."

County of Williamson v. Standard Accident Ins. Co., 32 Ill.App.2d 363, 365, 178 N.E.2d 149, 150 (1961). We agree with the District Judge that the cancellation clause is not ambiguous or vulnerable to a charge of double meaning. A similar provision (almost word for word identical) considered in Leslie v. Standard Accident Insurance Co., 327 Ill.App. 343, 345, 64 N.E.2d 391, 393 (1945), was found not to be ambiguous. See also Boyle v. Inter. Ins. Exchange of Chicago Motor Club, 335 Ill.App. 386, 389, 82 N.E.2d 179 (1948); Medford v. Pacific National Fire Ins. Co., 189 Or. 617, 219 P.2d 142, 148, 222 P.2d 407, 16 A.L.R.2d 1181 (1950); Midwestern Ins. Co. v. Cathey (Oklahoma), 262 P.2d 434, 436 (1953); Aetna Ins. Co. v. Aviritt, Tex.Civ.App., 199 S.W.2d 662, 665 (1947).

■ Neither party has cited, nor have we found an Indiana case dealing with the validity of this particular clause. However, there are cases which indicate that Indiana Courts would not require actual notice where the parties have contracted for notice by mail or publication. See Schmidt v. The German Mutual Insurance Co., 4 Ind.App. 340, 343–344, 30 N.E. 939 (1891); Orange County Farmers' Fire Ass'n. v. Frost, 74 Ind.App. 193, 196, 128 N.E. 768 (1920); Andrews v. Minter Coal & Coke Co., 90 Ind.App. 320, 327, 168 N.E. 869 (1929). We conclude that the Indiana Courts would not require actual notice, in the circumstances of the case before us, for cancellation of this policy.

■ The issue of public policy raised by appellants has frequently been the subject of consideration by the courts. The overwhelming weight of authority is adverse to appellants' position. See Gendron v. Calvert Fire Insurance Co., 47 N.M. 348, 143 P.2d 462, 466, 149 A.L.R. 1310 (1943); Trinity Universal Ins. Co. v. Willrich, 13 Wash.2d 263, 124 P.2d 950, 955, 142 A.L.R. 1 (and cases cited in the A.L.R. annotation) (1942); State Farm Mutual Automobile Ins. Co. v. Chaney, 10 Cir. 1959, 272 F.2d 20; Boyle v. Inter. Ins. Exchange of Chicago Motor Club, 335 Ill.App. 386, 82 N.E.2d 179 (1948).

Certainly Indiana courts show an unwillingness to invalidate contracts on the grounds of public policy unless the transaction contravenes some positive statute or well established rule of law, Hogston v. Bell, 185 Ind. 536, 544, 112 N.E. 883, 885 (1916), neither of which is seen here. See also Iroquois Underwriters v. State ex rel. Morgan, 211 Ind. 463, 473, 5 N.E.2d 908, 912 (1937); National Mill Supply Co. v. State ex rel. Morton, 211 Ind. 243, 249, 6 N.E.2d 543, 545, 109 A.L.R. 1101 (1937).

We have considered all other contentions advanced by appellants and find them without merit.

Although this Court is moved by the plight of the intervenor and is deeply sympathetic to her position, until there is legislation requiring actual, personal notice, compulsory insurance, or some like provision, we have no alternative but to affirm the judgment of the District Court.

Affirmed.