# SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, MAY TERM, 1882, IN THE SIXTY-SIXTH YEAR OF THE STATE.

---

No. 10,265.

THE SUPREME LODGE OF THE KNIGHTS OF HONOR *v.*
ABBOTT.

MUTUAL BENEFIT SOCIETY.— *Knights of Honor.—Liability Upon Death of Member.*—An action will lie against the Supreme Lodge of the Knights of Honor, to recover the amount provided by the by-laws of such society to be paid upon the death of a member of a subordinate lodge, by the beneficiary.

SAME.—*Construction of By-Law or Order of Supreme Lodge.—Suspension of Lodge.*—An order or by-law of the Supreme Lodge, reading as follows : "Any lodge failing, neglecting or refusing to forward assessments within thirty days from the date of notice of the death, shall stand suspended, and that if a death occur in said lodge during such suspension, no death benefit shall be paid," is to be construed as if it read "if a death occur in said lodge during such suspension, no death benefit shall be paid during such suspension."

SAME.—*Effect of Restoration of Suspended Lodge.—Answer.*—When the subordinate lodge is restored, then the rights of members to benefits are also revived; and an answer averring the suspension of a subordinate lodge, in an action against the Supreme Lodge to recover a death benefit by the beneficiary of a deceased member, but showing the restoration of the subordinate lodge a few days after the death of the member, is insufficient on demurrer.

From the Marion Superior Court.

*W. D. Bynum,* for appellant.

*E. C. Buskirk* and *P. W. Bartholomew,* for appellee.

WORDEN, C. J.—Action by the appellee against the appellant. Issue; trial; finding and judgment for the plaintiff.

The complaint alleges that " the defendant is a mutual, fraternal and benevolent order, incorporated by the Commonwealth of Kentucky," (by an act) " approved March 20th, 1876, to promote benevolence, morality, science and industry throughout the United States. The objects of the said corporation are to unite fraternally all acceptable white men of every profession, business and occupation; to give all possible moral and material aid in its power to its members and those depending upon them; to promote benevolence and charity by establishing a widows' and orphans' benefit fund, from which, on satisfactory evidence of the death of a member of the corporation, a sum not exceeding five thousand dollars is to be paid to his family, or as he may direct; to provide for creating a fund for the relief of sick and distressed members, etc.; that by its constitution and by-laws (a printed copy of which is filed herewith, etc.,) the highest death benefit to be paid the family of a deceased member is two thousand dollars; that said association is a secret society, having three degrees, known as Infancy, Youth and Manhood; that the defendant herein is the supreme authority in said order, and has control of all the grand and subordinate lodges of the order as shown by its constitution and by-laws aforesaid; that the system of the order required that a person becoming a member, on receiving the degree of Manhood, should deposit the sum of one assessment with the financial reporter of his lodge, and that when a death occurred in the order, if there is less than two thousand dollars in the supreme treasury, an assessment is made upon the entire membership of the order throughout the United States; that said assessments are collected in the following manner, viz.: each subordinate lodge collects from each of its members in good standing the

assessment for the supreme lodge, and forwards the one in the treasury, within thirty days from the date of the notice of assessment, as its agent, to the defendant; that the defendant has exclusive control of said widows' and orphans' benefit fund, and each subordinate lodge acts as the agent of the defendant in all things relating to said widows' and orphans' benefit fund; that Wheatly Lodge, No. eight (8), Knights of Honor, of Indianapolis, Marion county, Indiana, is one of the subordinate lodges established by the defendant, and one of its agents in Indiana; that the defendant, among others, established and duly instituted Tennessee Lodge, No. twenty (20), at the city of Nashville, in the State of Tennessee, with all the rights and powers of all other subordinate lodges of the Knights of Honor; that on or prior to June 6th, 1876, one Levi Abbott, the brother of this plaintiff, joined said Tennessee lodge, No. 20, Knights of Honor, and became a member in good standing from that date until February 20th, 1880, when he died, being in good standing, having paid all his assessments and dues; that said Levi Abbott went by the name of Doc Abbott in his lodge, and they issued a certificate of membership to him as said Doc Abbott, of which the following is a copy:" '(Here follows the copy.)

"That according to by-law No. 15 of the defendant, it is provided, in section two (2), that two thousand dollars shall be the highest amount paid by this order on the death of a brother. This sum shall be paid on the death of every full rate member, and one thousand dollars on the death of every half rate member; that said Levi Abbott was a full rate member. Law No. 22 of the defendant's constitution and laws, and section 4, provides as follows: 'Each applicant shall direct, in his application, to whom he desires his death benefit to be paid,' etc.; that said Levi (Doc) Abbott, in accordance with said law, directed his benefit to be paid to this plaintiff; that immediately after the said Levi (Doc) Abbott's death, the defendant was furnished by this plaintiff with notice of his (Levi's) death, and all the requirements of the de-

fendant as to proof of death, under the constitution and laws of said defendant, were performed and complied with; that the reporter of Tennessee Lodge, No. 20, of which Abbott was a member, forwarded immediately to the supreme reporter a notice of his (Abbott's) death, stating the name, age, date of death, time that he was raised to the third degree, or degree of Manhood, and the amount he had paid into the widows' and orphans' benefit fund, and that he was in good standing when he died, and that his brother, the beneficiary as aforesaid, was entitled to the whole amount of the benefit of the order, and giving the number of his certificate of membership." Here follow allegations of non-payment, etc.

. The defendant demurred to the complaint for want of sufficient facts, but the demurrer was overruled. It then answered, first, by general denial; and, second, recapitulating and admitting most of the facts alleged in the complaint, but averring that " the plaintiff ought not to recover anything in this action, for the reason that long prior to the death of said Levi Abbott said defendant adopted as one of the laws and rules governing her and the subordinate lodges thereof, in the payment of assessments, an order that it should be the duty of each subordinate lodge, upon the receipt of a notice from the supreme reporter of an assessment, to cause the said assessment called for in the treasury to be immediately forwarded to the supreme treasury, and that any lodge failing, neglecting, or refusing to forward the same within thirty days from the date of said notice, should stand suspended, and that if a death should occur in said lodge during such suspension, no death benefit should be paid : Provided, that a member in good standing, holding an unexpired withdrawal card, should be exempt from said law, a copy of which rule and law is filed herewith and made a part hereof; that said rule and law, for more than a year immediately prior to, and at the time of, the death of said Levi Abbott, had been, and still was, in full force and effect.

"That on the —— day of ———, 1880, an assessment was

duly made by the supreme reporter of said defendant lodge, upon the subordinate lodges, and the one in the treasuries thereof called for ; that notice of said assessment and call was duly given to said Tennessee Lodge, No. 20, of which said Levi Abbott at the time was a member, on the —— day of ————, 1880 ; that said Tennessee Lodge, No. 20, after the date and receipt of said notice, wholly neglected, failed and refused for the period of thirty days thereafter, to forward to the supreme treasurer the assessment, then in the treasury of said lodge and called, the same being assessment number 64 ; and at the expiration of said period, to wit, on the 17th day of Februrary, 1880, said Tennessee Lodge was, by the rules and regulations of said order, suspended, and remained suspended continuously from that time until the 23d day of February, 1880 ; that said Levi Abbott died on the 20th day of February, 1880, during the time of the suspension of said Tennessee Lodge, of which he was a member ; that at the time of his death said Levi Abbott did not hold from his said lodge any unexpired withdrawal card. Wherefore," etc.

To this paragraph of answer, the plaintiff demurred for want of sufficient facts, and the demurrer was sustained.

It is insisted by the appellant, that the complaint was bad, as not showing any cause of action against the appellant ; that no action will lie against it to recover the money claimed, but that " the only remedy is by mandate against the supreme officers to compel them to issue an order against the fund for the amount due the plaintiff."

We, however, do not concur in that view of the question. The by-law number 15, as stated in the complaint, imposes on the appellant an obligation to pay the money as provided for therein, which may be enforced by an action against the appellant.

There are some other minor objections made to the complaint, which need not be specially noticed, as that it is uncertain in several respects. We think the complaint states substantially enough facts to entitle the plaintiff to recover,

and if there is any uncertainty in its allegations, a motion to require it to be made more certain would have remedied the defect.

We come to what seems to us to be the main question in the case, viz. : Was the second paragraph of answer good ?. We are of opinion that it was not, and, therefore, that the demurrer to it was correctly sustained.

The "order" made by the defendant, and relied upon as a defence, in relation to the forwarding of assessments by the subordinate lodges to the supreme treasury, provides that "any lodge failing, neglecting or refusing to forward the same within thirty days from the date of said notice, shall stand suspended, and that if a death occur in said lodge during such suspension, no death benefit shall be paid," etc.

This order contemplates the restoration of the delinquent lodge on the payment, after suspension, of the required assessment, for it prohibits the payment of benefits when death occurs *during such* suspension.

Now, the question arises, what is meant by the words, " if a death occur in said lodge during such suspension, no death benefit shall be paid ? "

Is it meant by the provision to cut off absolutely, as forfeited, all right to death benefits of a member in good standing, who dies during the suspension of his lodge, and who was not in default in the payment of his dues or otherwise, because his lodge was in default at the time of his death, though his lodge afterwards pays up and is restored ?

This would be a harsh construction, and one that can not be adopted, if the provision admits of any other reasonable interpretation. Forfeitures are not favored in law, and instruments will be so construed as to avoid them, if it can be done without doing violence to the language employed. See the case of *Schunck* v. *Gegenseitiger Wittwen und Waisen Fond*, 44 Wis. 369, a case very much like the present.

We think the provision, fairly construed, means that where a death occurs during the suspension of the subordinate lodge,

no death benefit shall be paid during such suspension, as if it had read as follows : "If a death occur in said lodge during such suspension, no death benefit shall be paid during such suspension."

This construction seems to us to be reasonable and well calculated to carry out the general purpose of the defendant's organization.

When a subordinate lodge is thus suspended, no death benefits are to be paid on behalf of members dying during the suspension. This is a strong incentive to the delinquent lodge to respond to the calls upon it and be restored. When restored, the rights to death benefits, which were suspended with the suspension of the lodge, are restored with its restoration.

The answer in question is clearly bad, inasmuch as it shows that the subordinate lodge, of which Levi Abbott was a member, was restored within a few days after his death.

A motion for a new trial was made on the ground that the finding was contrary to law, and not sustained by the evidence. The motion was correctly overruled.

The judgment below is affirmed, with costs.